## Providence Mining Co. v. Hind, Receiver.

(Decided February 11, 1921.)

### Appeal from Kenton Circuit (Common Law and Equity Division).

1. Insurance—Assessments.—Insured under a policy of insurance issued by an assessment company is liable for assessments made within statutory limits to create a fund with which to pay accrued losses and expenses.

2. Insurance—Assessments.—Where insured's president acted as agent for an assessment insurance company, and later turned over the agency to employes of insured with instructions to place renewals for insurance in the company for which they were acting as agents, insured cannot refuse to pay assessments levied on the ground that it did not sign the application for the insurance, or that its employes had no authority to sign said application.

3. Insurance—Assessments.—It is no defense to a demand for assessments under a policy of insurance that insured did not know the policies were in an assessment company where insured's president and its employes acted as agents for the company.

4. Insurance—Assessments.—Where the policy expressly provides that the by-laws are made a part thereof and it is further stipulated in the policy that its acceptance constitutes one a member of the company and that by so accepting the policy insured agrees to pay, in addition to the annual premiums, such sums as may be assessed by the directors of the insurance company, insured is liable for the amounts lawfully assessed.

5. Insurance—Assessments.—Ignorance of the fact that the company in which appellant placed its policies was an assessment company held not an excuse to defeat assessments where the appellant's president, a successful business man, had acted as agent for the company. It will be presumed he knew the company was operated on the assessment basis, the contention that it was misrepresented to him he was insuring in an old line company, not finding support in the evidence.

W. H. YOST and R. C. SIMMONS for appellant.

MEYERS & HOWARD for appellee,

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

The Kentucky Fire Insurance Company was organized in April, 1914. It was an assessment or co-operative company, provision for its creation being found in Ky. Stats., sections 702, *et seq*. It came into existence for the purpose of meeting a situation produced by the withdrawal from Kentucky of a large number of insurance companies theretofore doing business in the state, because of some disagreement between said companies and the Insurance Department of the state. For a few months the new company did exceedingly well, at least it succeeded in placing considerably more than one million dollars of insurance on its books. The misunderstanding between the State Insurance Department and the insurance companies was of short duration and the companies soon returned. This settlement of their differences resulted in a tremendous loss of business by the Kentucky Fire Insurance Company due to cancellation. It is claimed it lost most of the better class of the business, the larger part of that remaining being undesirable and non-profitable.

The loss of business and the consequent falling off in premium receipts compelled the company to levy an assessment against its policyholders, but only a limited number responded. The company's inability to pay losses not only resulted in its being made defendant in several suits in different parts of the state, but necessitated the employment of counsel and the expense and cost incident to litigation. Nor was this all—the running expenses of the business, salaries, stationery, rents, etc., were daily accumulating. In may, 1915, application was made by two creditors for the appointment of a receiver to take charge of the affairs of the company, and W. N. Hind was so appointed.

The receiver reported that the fire losses alone amounted to $60,000. All existing policies were cancelled. The court directed the receiver to make an assessment against the members or policyholders of $3.00 upon each $100.00 of insurance in force, this being the maximum liability fixed by Ky. Stats., section 709a. On this assessment the receiver collected about $22,000. Several of the policyholders, including appellant, declined to pay. Appellant had twelve policies in the company and its part of the assessment was found by the judgment to be $628.50, and the only policyholder against whom a

judgment was rendered in an amount to take an appeal to this court, the sums assessed others being under $100.

A reversal is asked on three grounds which we will consider as presented.

1. That under Ky. Stats., section 702, it is necessary that insured sign a written application before it can be bound for its proportion of the loss, and as it did not sign any application for any of the policies issued to it, it is free from liability.

2. That this application must be signed by some one having the authority to bind the applicant.

We will discuss these propositions together, nor do they present any difficulties, as will be seen from a brief statement of the facts.

Desirous of getting a foothold in different sections of the state the company's secretary visited certain towns with the intention of establishing agencies. Impressed with the importance of securing as the company's representatives the best available persons, it is not surprising he should have selected Mr. W. J. Nisbet, of Providence, Ky., the president of appellant, a successful business man, the head of a corporation that in its coal operations had an output of about 200,000 tons annually, with a yearly income of from $50,000 to $75,000. Mr. Nisbet accepted the agency, and it was maintained in his name for about two months and until at his request it was transferred to Messrs. Hill and Meidrich, two employes of appellant company. Between April, 1914, when Nisbet assumed the agency and January, 1915, at least twelve policies for a total coverage of $20,950.00 were issued to appellant by the insurance company and upon which insured paid more than $400.00 in premiums.

The application for the first policy so issued was endorsed in the name of Nisbet as agent, the others bear the agency name of Hill and Meidrich. Appellant's name appears on most of the applications signed by "C. J. M. (Meidrich)."

Mail pertaining to the insurance business addressed to Nisbet was turned over by him to Hill and Meidrich; they actually wrote the policies and collected the premiums. Nisbet authorized Hill and Meidrich to use his name as agent until the transfer of the agency could be effected. He entrusted Meidrich and others with the placing of the company's insurance and says he never read any of the policies.

Meidrich, introduced by appellant, and now its secretary testifies to the same effect, and when asked to state what instructions Nisbet gave him in regard to the insurance, says:

"He told me, as your policies expire to renew them in the Kentucky Fire Insurance Company, and deposit these policies in the vault and we could collect the premiums on them."

Notwithstanding the strong probative effect of this evidence, appellant insists that Hill and Meidrich had no authority to bind it since Nisbet never authorized them to place any insurance in an assessment company, his instructions being to put it in an old line company. Though Hill and Meidrich were charged with placing the renewals and were told by Nisbet to insure in the Kentucky Company, both Nisbet and Meidrich state that the first knowledge they had the latter was an assessment company was when they received notice that the company was in financial straits. Not until then did they examine the policies and dicover, as they could have done at any time, that the Kentucky Company was an assessment corporation, as the by-laws, printed in full in the policies, are expressly made a part of the insurance contract.

In article ten of the by-laws provision is made for an assessment of the members or policyholders in the event the reserve fund becomes exhausted.

It is difficult to understand how Nisbet and Meidrich, careful and prudent business men as they appear to be, could have been ignorant of the fact that the Kentucky Company was organized upon an assessment basis. Both had acted as its agent, they handled a number of its policies, paid the premiums, and evidently considered the mining company as covered to the extent of the insurance in force. Farrar, the insurance company's secretary, said Nisbet told him he was seriously troubled as to his properties at Providence, because of his inability to secure proper protection against loss by fire. This was at the time most of the old line companies had withdrawn from the state and Nisbet must have been cognizant of this fact as evidenced by his statement to Farrar.

The lower court was of the opinion the statute (sec. 702) did not require that the company write policies only upon written application signed by the applicant. The portion of the statute referred to reads:

"Every person insured in such corporation, who shall sign an application for insurance, as required by the certificate of incorporation, or the by-laws of the corporation, shall thereby become a member thereof."

In Bracken County Ins. Co. v. Murray, 166 Ky. 821, 179 S. W. 842, this court held that to constitute one a member of a co-operative or assessment company under Ky. Stats., section 702, he must not only apply for a policy, but the policy must be issued to him. A member and a policyholder were treated as one and the same and at once became an insurer as well as the insured.

We do not find it necessary to pass upon the necessity of a signed application in the instant case. While aware of the rule that an agent with limited authority can not bind his principal with matters outside the scope of his authority, we are satisfied Hill and Meidrich were given direct and positive authority, indeed direction by appellant's president, to place insurance in the Kentucky Company. These agents and employes of both the insurer and insured issued the policies, not only with the knowledge but under instructions of Nisbet to place the renewals in the Kentucky Company.

Then, too, in the printed stipulations and conditions made a part of the policy it is provided:

"The insured heretofore named, by accepting this policy, thereby becomes a member of this company and agrees to pay it the premiums annually during the life of this policy, and in addition thereto such sum or sums . . . as the directors of said company shall assess . . . ."

The statute was intended as a protection to the company; membership could not be forced upon it and more than the mere application was necessary.

But upon the issuance of the policy by the company and its acceptance, insured would thereby become a member of the company subject to its by-laws and bound by the provisions and conditions of the policy. Such is the case here. For the policies issued and delivered to appellant there were applications signed by its duly authorized agents, and fraud aside, the insured is liable for the assessment ordered by the court.

3. It is contended the policies were obtained through misunderstanding and misrepresentation. This contention has two angles. (a) Nisbet testifies that Farrar told him the Kentucky Company was an old line stock

company and he wanted him to take some stock in the company, and the first he knew it was an assessment company was when he received the notice of the assessment. He files a letter written to him by Farrar in March, 1915, which he claims is confirmatory of this fact. The letter refers to a conversation with Nisbet the preceding summer when they were talking over investing in insurance stock. The letter, however, expressly refers to the Colonial Fire Insurance Company, a stock company whose organization was contemplated with the end in view of taking over or reinsuring the risks on the books of the Kentucky Company. Farrar says this is the company to which he made reference in his conference with Nisbet. We are inclined to accept this version of the conversation. In the first place there could have been no stock in the Kentucky Company. In the second it is inconceivable that such capable and successful business men as Nisbet and Meidrich could have been so ignorant of the character of the Kentucky Company for two reasons:

(1) They both acted as agents for the company and it is not probable they would have assumed this relationship and continued therein for a period of several months without discovering they were representing an assessment company, and (2) due consideration for the interest and welfare of their principal, the exercise of ordinary business acumen or even slight care would have caused them to make at least a casual examination of the policies.

(b) Nisbet says he told Hill and Meidrich to place the renewals in an old line company and he did not authorize them to insure in an assessment company. From this it is argued that the placement of the insurance in the Kentucky Company, contrary to Nisbet's instruction, relieves appellant from all liability growing out of the insurance contracts. Counsel overlook the uncontradicted statement of Meidrich that Nisbet told him as the policies expired to place the renewals in the Kentucky Company. Nor can any special significance be attached to the fact that the policies as written were placed in the vault and were never seen or examined by Nisbet until after he received the notice of assessment. This is merely confirmatory of the agency and authority of Hill and Meidrich to take care of the renewals, pay the premiums

and put the policies in the vault as Meidrich testifies Nisbet instructed him.

We find nothing in the record justifying a reversal, hence the judgment is affirmed.